UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DIANA TAEKKER,

        Plaintiff,

        v.

JOHN E. POTTER, Postmaster
General, United States Postal Service,

        Defendant.

Civil No. 08-0083-HA

OPINION AND ORDER

HAGGERTY, District Judge:

Plaintiff alleges that her employer (hereinafter referred to as defendant) subjected her to a sexually hostile work environment and retaliated against her in violation of 42 U.S.C. § 2000e *et seq.* (Title VII). Defendant filed a Motion for Summary Judgment [23] and oral argument was heard on July 13, 2009. For the following reasons, defendant's motion is denied.

**FACTUAL BACKGROUND**

The following facts are undisputed unless noted and are stated in the light most favorable to plaintiff. Plaintiff is employed as a mail handler at defendant's main facility in Portland, Oregon. Plaintiff held the position of Advance Facer Canceller System (AFCS) relief operator.

OPINION AND ORDER- 1

She worked approximately four hours of her shift operating the AFCS machines when the regular operators took lunch or rest breaks. Plaintiff performed "flip-flop" work for the remainder of her shift, usually sorting letters rejected by the AFCS machines.

Plaintiff received grade five level pay while working on the AFCS machine and grade four level pay for her other work. Grade five level pay is sixty to eighty cents higher per hour than grade four level pay. Plaintiff bid into the AFCS operator position because she preferred the increased pay level and decreased physical demands.

Plaintiff's co-worker, George Thomas, has been employed by defendant since 1994. In September 2006, Thomas began calling plaintiff "sweetie," and patted or hugged her when she relieved him for his breaks. Plaintiff contends that these made her uncomfortable, but she did not complain to Thomas, notify her supervisors, or view this touching as sexual harassment.

According to plaintiff, Thomas's conduct escalated in January 2007 when he began giving her "frontal sideways hugs" in which he "would draw his arm and hand across her breasts." Mem. in Support of Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Resp.") at 5. Plaintiff spoke to her immediate supervisor, Tasha Patton, and requested that she not be assigned to relieve Thomas. She told Patton that Thomas was too "touchy-feely," and that his touching was becoming more aggressive and making her uncomfortable. Pl.'s Resp. at 5. Patton allegedly told plaintiff that she would speak with her manager, Elta Carter, to ensure that plaintiff would not relieve Thomas. Plaintiff was not reassigned and Thomas continued to grope her. Plaintiff attempted to speak with Carter herself on two occasions, but was told that Carter was too busy.

On February 5, 2007, plaintiff relieved Thomas for his lunch break. When he returned, Thomas came up behind plaintiff, put his hands on her hips, pressed his waist against her, and

OPINION AND ORDER- 2

said "Oh baby." Plaintiff left the work room crying and allegedly suffered a nervous breakdown. The next day, plaintiff went to see her doctor for a mental health referral.

According to defendant, plaintiff first reported Thomas's conduct to Carter on February 13, 2007. Plaintiff allegedly whispered to Carter during a meeting that she could no longer relieve Thomas. Def.'s Mem. at 3. Carter then referred plaintiff to the acting lead manager, Jeanie Goold. Goold met with plaintiff on February 16, 2007 and immediately sent an email to her supervisors reporting the incident.

Defendant conducted an investigation from February 25, 2007 through March 1, 2007. The investigator interviewed plaintiff, seven co-workers, and Thomas. Two co-workers reported that they witnessed plaintiff crying on February 5, 2007, and that plaintiff told them she had been sexually harassed. However, the investigation concluded that the commission of sexual harassment could not be determined. Plaintiff characterizes this conclusion as a sham because the investigator merely asked Thomas whether he committed the alleged misconduct, never asked Thomas any follow-up questions, and was trained to only elicit simple yes/no responses from the accused. Pl.'s Resp. at 7.

Following the report, plaintiff was precluded from working as the AFCS relief operator during Thomas's shift. Plaintiff wanted to work on other AFCS machines while Thomas was operating his machine, but defendant declined her requests. According to plaintiff, she repeatedly told her supervisors that defendant's decision to prohibit her from working on other AFCS machines and to limit her AFCS work to only Saturdays was unfair to her.

Following her complaint, plaintiff was reassigned to work on the front cull belt and the AFCS cull belt. Cull belt work required more twisting, turning, reaching, and lifting, and

OPINION AND ORDER- 3

consequently, aggravated plaintiff's back and shoulders. She received grade four level pay for this work. Plaintiff alleges that her complaints about Thomas resulted in her being reassigned to more physically strenuous work for less pay.

## STANDARDS

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see Bahn v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). The moving party carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *MetroPCS, Inc. v. City & County of S.F.*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56(c)).

Deference to the non-moving party has limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position [is]

insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

### 1.     Hostile Work Environment

Plaintiff asserts that defendant subjected her to a hostile work environment because of Thomas's sexually harassing conduct. To establish a prima facie case of hostile work environment, plaintiff must show that: (1) she was subjected to verbal or physical conduct of a sexual nature; (2) this conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and create an abusive work environment. *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007). To be actionable, the harassment must be both subjectively and objectively offensive. *Id.*

In evaluating the objective hostility of a work environment, the court should consider the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "[S]imple teasing . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quotation and citation omitted). The court should objectively measure the hostility of a work environment based on what a reasonable woman would consider abusive. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008).

### 2.     Retaliation

OPINION AND ORDER- 5

To establish a prima facie case of retaliation, plaintiff must show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between her activity and the employment action. *Davis*, 520 F.3d at 1093-94. An employment action is adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Once plaintiff has met her prima facie burden, the burden of production shifts to the employer to present legitimate reasons for the adverse employment action. *Davis*, 520 F.3d at 1094. Once the employer carries this burden, plaintiff must demonstrate that a genuine issue of material fact exists as to whether the reason advanced by the employer was a pretext. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1106 (9th Cir. 2008).

### 3. Vicarious Liability

To establish the affirmative defense applicable to vicarious liability, the employer must show: "(1) it exercised reasonable care to prevent and correct promptly any sexual harassment, and (2) the employee unreasonably failed to take advantage of preventive or corrective opportunities offered by the employer, or to avoid harm otherwise." *Davis*, 520 F.3d at 1096-97. The defendant's remedy is reasonable when it: (1) stops harassment by the person who engaged in the harassment; and (2) persuades potential harassers to refrain from unlawful conduct. *Hardage v. CBS Broadcasting, Inc.*, 427 F.3d 1177, 1186 (9th Cir. 2005). This defense is not available, however, if the harassment resulted in a significant change in employment status, such as an undesirable reassignment. *Davis*, 520 F.3d at 1097.

**QUESTIONS PRESENTED**

OPINION AND ORDER- 6

Defendant seeks summary judgment on plaintiff's hostile work environment and retaliation claims based on plaintiff's failure to establish her prima facie case. Defendant also asserts an affirmative defense applicable to vicarious liability.

## ANALYSIS

For the purpose of this motion only, defendant concedes that plaintiff was subjected to unwelcome verbal or physical conduct of a sexual nature. Defendant contests plaintiff's ability to establish the third element of her hostile work environment claim, stating that Thomas's conduct was not sufficiently pervasive or severe to alter the conditions of plaintiff's employment.

This court finds that a genuine issue of material fact exists as to the severity and pervasiveness of Thomas's conduct. Viewing the facts in the light most favorable to plaintiff, a jury could reasonably conclude that Thomas's conduct was objectively offensive to a reasonable woman, and that the abuse interfered with plaintiff's work. Moreover, the Ninth Circuit advises that the issue of severity of abuse is best left to the fact-finder. *See Davis*, 520 F.3d at 1096 ("In close cases such as this one, where the severity of frequent abuse is questionable, it is more appropriate to leave the assessment to the fact-finder than for the court to decide the case on summary judgment.") (citations omitted). Summary judgment on plaintiff's hostile work environment claim is denied.

Plaintiff presents a strong case for her retaliation claim. Plaintiff was subjected to adverse employment actions by defendant when she was prohibited from working on the AFCS machine and reassigned to more strenuous work with less pay. Plaintiff repeatedly asked to relieve other AFCS operators, but was denied that option.

OPINION AND ORDER- 7

The Ninth Circuit takes an expansive view of actions that can be considered adverse employment actions. *Ray v. Henderson*, 217 F.3d 1234, 1240-43 (9th Cir. 2000) (holding "that an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity"); *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 848 (9th Cir. 2004) (finding that a warning letter placed in an employee's personnel file "constitutes an adverse employment action"); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (holding that "[t]ransfers of job duties and undeserved performance ratings" would constitute adverse employment actions) (citation omitted). Viewing the facts favorably to plaintiff, a jury could easily conclude that plaintiff's reassignment was an adverse employment action taken in response to her complaints about Thomas's conduct. Defendant's request for summary judgment as to plaintiff's retaliation claim is denied.

This court also finds that genuine issues of material fact exist regarding whether defendant is entitled to summary judgment because it should not be held vicariously liable for Thomas's conduct. Although defendant argues that it exercised reasonable care to prevent and correct sexual harassment, plaintiff's assertion that defendant's investigation was insufficient because it was made in bad faith and was a sham is compelling. *See Swenson v. Potter*, 271 F.3d 1184, 1193 (9th Cir. 2001) (stating that an investigation intended to "reach a pre-determined conclusion or otherwise conducted in bad faith" cannot satisfy the employer's remedial obligation) (citation omitted). Additionally, defendant's decision to move plaintiff to a less desirable position to minimize contact with Thomas raises a fact issue regarding the sufficiency of defendant's remedial efforts. *Id.* at 1194 (stating that moving plaintiff to an objectively less desirable position is an inappropriate remedial response).

OPINION AND ORDER- 8

Plaintiff also raises a genuine issue of fact regarding the sufficiency of defendant's remedial action when alleging that plaintiff's January 2007 conversation with Patton resulted in no action by defendant. Based on the facts, a reasonable jury could conclude that defendant failed to take sufficient remedial measures.

Furthermore, summary judgment is inappropriate because defendant did not establish that plaintiff unreasonably failed to take advantage of defendant's corrective opportunities. *See Craig*, 496 F.3d at 1057-58 (reversing summary judgment based on the affirmative defense where the employer sufficiently proved that it took prompt remedial measures, but could not demonstrate that the employee unreasonably failed to take advantage of the employer's corrective procedures). Summary judgment based on vicarious liability is denied.

## CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment [23] is DENIED.

IT IS SO ORDERED.

DATED this  17  day of July, 2009.

        /s/ ANCER L. HAGGERTY
        ANCER L. HAGGERTY
        United States District Judge

OPINION AND ORDER- 9